## The Manufacturers' and Mechanics' Savings and Loan Company *versus* The Odd Fellows' Hall Association of Spring Garden.

*Official bond, confined to period for which officer was appointed or elected.*

1. Where a bond is given by an officer of an association, conditioned for the faithful performance of his duties, the condition is to be confined to the period of appointment or election for which the bond was given.

2. Hence, where one elected to fill a vacancy as treasurer of an association, gave bond to discharge his duties with fidelity and as justice and equity shall require, upon which judgment was entered by virtue of a warrant of attorney; and, the office being annual, was re-elected for several years but without another bond, his accounts annually settled, and no deficiency occurring until the year of his death: in the distribution of the proceeds of his real estate, it was *Held*, that the bond was confined to the period for which he was elected at the time it was given, and that the association were not entitled to payment of the judgment as a continuing lien.

APPEAL from the Orphans' Court of *Philadelphia*.

This was an appeal by the Loan Company from the decree of the Orphans' Court, reversing the report of the auditor upon the account of the administratrix of the estate of Charles Shaffer, deceased.

The case was this:—

Charles Shaffer was, on the 15th day of July 1855, elected treasurer of the Odd Fellows' Hall Association of Spring Garden, for the remainder of the year 1855, the treasurer who had been elected in January 1855 having died a few months after his election. On the 15th day of September 1856, Shaffer, agreeably to the by-laws of said association, gave, as treasurer, his own bond for $2000, with warrant of attorney annexed, upon which judgment was entered in the District Court September 15th 1855.

This bond and warrant contained the following condition, viz.: "That if I, the said Charles Shaffer, shall discharge the duties of treasurer of said association with fidelity, and as justice and equity shall require, and shall perform such duty as the by-laws now in force, or any by-laws, resolutions, or order of the said association hereafter to be made and passed shall require of me,

[M. & M. Savings Loan Co. v. O. F. Hall Association.]

this obligation shall then be void, otherwise it shall remain in full force and virtue."

The government of the association is, by its charter, vested in a board of trustees, who are elected annually, and at the first meeting after their election in each year are required to elect a president, secretary, and treasurer. The treasurer is required to give security to the satisfaction of the board in the sum of $2000, conditioned for the faithful performance of his duties as treasurer.

In 1856 Charles Shaffer was re-elected treasurer of the association, and annually thereafter until his death, which happened soon after his election in 1860.

No new bond was taken by the association from Shaffer after his first election in 1855.

The judgment entered on the bond given at that time remained of record at the time of his death; at which time he, as treasurer, owed the said association $622.04.

The Manufacturers' and Mechanics' Savings and Loan Company, on the 22d day of September 1859, obtained a judgment in the District Court of Philadelphia against Shaffer for the sum of $644.86.

The fund for distribution was the proceeds of real estate of deceased.

The Odd Fellows' Hall Association claimed that the bond given by Shaffer was a continuing bond, and good against him so long as he was treasurer of the association; that the lien of the judgment was preserved by his death, and that they, as senior judgment-creditors, were entitled to be first paid out of the fund.

The Manufacturers' and Mechanics' Savings and Loan Company alleged that the bond given by Shaffer was only for the period for which he was first elected—that the condition was performed when his accounts with the association up to 1856 were settled, and that they were the only judgment-creditors, and entitled to be paid in full.

The auditor reported the Manufacturers' and Mechanics' Savings Fund and Loan Association's judgment to be paid in full as the first lien on the real estate.

To this report of the auditor the Odd Fellows' Hall Association of Spring Garden excepted.

The court below reversed the report of the auditor, and ordered the judgment of the Odd Fellows' Hall Association to be paid in full, and the residue of the fund to be paid to the Manufacturers' and Mechanics' Savings and Loan Association; which was the error assigned.

*George W. Thorn*, for appellants.

*Amos Briggs*, for appellees.

The opinion of the court was delivered, January 16th 1865, by
Agnew, J.—Charles Shaffer was the treasurer of the Odd
Fellows' Hall Association in the year 1855—elected to fill a
vacancy caused by the death of the treasurer of that year. The
office under the charter and by-laws is annual, and Shaffer was
re-elected annually until the year 1860. In September 1855 he
gave his own bond as treasurer, conditioned for the faithful dis-
charge of his duties as treasurer. On this bond judgment was
entered in pursuance of a warrant of attorney. He was in no
default until 1860, when he died, indebted to the Odd Fellows'
Hall Association in a balance of his account as treasurer, which
the association claims as a lien under this judgment upon his
real estate. In September 1859, the Manufacturers' and Me-
chanics' Savings and Loan Company entered up judgment against
Shaffer for a sum due to them, and claim payment out of the
fund in court in preference to the Odd Fellows' Hall Association,
on the ground that the judgment of the latter stood as a security
only for any liability of Shaffer incurred during the term of
office for which he was elected, when he gave the bond.

This is a controversy between lien-creditors, and consequently
must be determined by the terms of the bond itself, and the
notice which it gives to other lien-creditors of the extent of
Shaffer's liability under it. In all such controversies, the extent
of the lien is to be determined by the face of the record, and
sometimes the mere docket-entry. So far has this principle
been carried for the protection of the public, that clerical mis-
takes of the officer have been ruled to conclude the plaintiff in
the judgment as to third parties: Bean *v.* Patterson, 3 W. & S.
236; Wood *v.* Reynolds, 7 Id. 406; Hance's Appeal, 1 Barr 411.

What notice, then, did this bond give to third persons of the
extent of the lien under it? It begins: "Know all men by these
presents, that I, Charles Shaffer, of the city of Philadelphia, and
*treasurer* of the association hereafter mentioned, am held and
firmly bound," &c. The condition ran: "That if I, the said
Charles Shaffer, shall discharge the duties of treasurer of said
association with fidelity," &c. How would a third person under-
stand the reading of this bond? Clearly it would be, "I,
Charles Shaffer, *now* of the city of Philadelphia, and *now* trea-
surer." It distinctly refers to the office he *then* held, not to
one he might hold in the future. To the office he then held,
the language of the condition must therefore refer. Should a
creditor or a purchaser go to the record to consult it for liens
against Shaffer, and finding this bond, and having ascertained
that the office of treasurer was annual, or for a given period,
how would he govern himself, if he intended to give credit to, or

[M. & M. Savings Loan Co. *v.* O. F. Hall Association.]

to purchase of Shaffer? Certainly he could not know, and could have no possible means of ascertaining, whether he would be re-elected, or how often, and to what extent the bond would cover his property. There is no obligation to re-elect, and the bond gives no notice of intended re-election, or how often, or if re-elected that it will be held as a security for another term or terms. If the parties to the bond chose to treat it as a continuing security, this fact was *dehors* the record, and third parties were under no obligation to go outside to learn it.

A number of authorities have been cited to show that even between the parties to the bond, the condition is to be confined to the period of appointment or election, for which the bond, as in this case, was given: Lord Arlington *v.* Merrick, 2 Saunders' Rep. 411; Liverpool Waterworks *v.* Atkinson, 6 East 507; Barker *v.* Parker, 1 Taunt. Rep. 295; Peppin *v.* Cooper, 2 B. & A. 431; Commonwealth *v.* Baynton, 4 Dall. 282; Commonwealth *v.* West, 1 Rawle 31; Commonwealth *v.* Reitzell, 9 W. & S. 109. But it is supposed that the fact of there being sureties in many of those cases distinguishes them, and that the bond should be held good between the obligee and principal obligor. It might be sufficient to reply, as was said in The Commonwealth *v.* West, by both the judges, that, as to the *terms* of the bond, there cannot be one construction for one obligor, and another for the other.

But when we find a controversy not between the parties to the instrument, but between the obligee and a third person, he, as a lien-creditor, for reasons of manifest policy, is entitled to the same strictness in the interpretation of the terms of the instrument as a surety. It is through these terms alone, all others who deal with the obligor have notice of the extent to which he is intended to be held; and it is not equitable, nor for the interests of society, that they should afterwards find their liens or their estates swept away by unexpected and superadded liabilities.

We think the auditor was right, and the court was in error in setting aside his report.

> And now, January 16th 1865, it is ordered, that the decree of the Orphans' Court be reversed and set aside; and it is now decreed that the distribution reported by the auditor be confirmed, and that distribution of the fund in court be made according to the same, and it is further adjudged that the appellees pay the costs incurred since the filing of the report.